[No. S129896. Jan. 29, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
LAWRENCE LAMONT CALHOUN et al., Defendants and Appellants.

**400**

### COUNSEL

Greg M. Kane, under appointment by the Supreme Court, for Defendant and Appellant Lawrence Lamont Calhoun.

Anthony J. Dain and Eric R. Larson, under appointments by the Supreme Court, for Defendant and Appellant George Kenneth Waller, Jr.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Lilia E. Garcia, Steven T. Oetting, Douglas C. S. Lee, Peter Quon, Jr., and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

### OPINION

**CORRIGAN, J.**—Here we consider two issues: first, whether someone convicted of gross vehicular manslaughter as an aider and abettor may be subject to an enhancement under Vehicle Code[1] section 20001, subdivision (c) (section 20001(c)) for fleeing the scene; second, whether an upper term sentence may be imposed based upon a "multiple victims" aggravating factor if only one victim was named in each count. We answer each question in the affirmative, and therefore reverse the contrary judgment of the Court of Appeal.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are undisputed. At approximately 7:00 p.m. on October, 2002, defendants Lawrence Lamont Calhoun and George Kenneth Waller, Jr., were drag racing at over 70 miles per hour. Waller passed Calhoun and struck

---

[1] All further undesignated statutory references are to this code.

Shanna Jump's car. Jump and passenger Brian Hanson were killed. Jump's other passenger, Michael Hanson, was rendered profoundly disabled. Waller's passenger, Jasen Moore, suffered great bodily injury. Calhoun saw "how bad" the accident was and thought, "Well, I better get out of here." He drove home, and turned himself in over two months later.

Calhoun and Waller were each charged with two counts of second degree murder, two counts of vehicular manslaughter with gross negligence, and two counts of reckless driving causing bodily injury. The information also alleged that Calhoun fled the scene of the crime (§ 20001(c)).

A jury acquitted Calhoun and Waller of second degree murder, convicting them of vehicular manslaughter with gross negligence, and reckless driving causing bodily injury. The jury also found that Calhoun fled the scene.

The court sentenced Calhoun to nine years in prison, imposing the middle term of four years for one manslaughter count (Pen. Code, § 192, subd. (c)(1)), a consecutive five-year enhancement for fleeing the scene of the crime (§ 20001(c)), a concurrent four-year term for the second manslaughter count, and concurrent terms of 180 days for each of the reckless driving counts (§ 23104, subd. (a)). It stayed one of the two flight enhancements. Waller was sentenced to six years in prison, the upper term, for one manslaughter count. Terms of six years for the second count, and 180 days for each of the two reckless driving counts, were ordered to run concurrently. In a bifurcated trial, the court found Waller personally inflicted great bodily injury in committing manslaughter. (Pen. Code, § 1192.7, subd. (c)(8).)

The Court of Appeal concluded that the section 20001(c) flight enhancement applies only to those who directly commit an underlying offense, not to aiders and abettors. Accordingly, it vacated Calhoun's two 5-year enhancements. The court also concluded that an upper term could not be imposed by relying on multiple victims as an aggravating factor. Thus, it vacated Waller's two 6-year terms and remanded for resentencing of both defendants.

## II. Discussion

### A. Application of section 20001(c) to an aider and abettor

Calhoun concedes he is guilty of gross vehicular manslaughter as an aider and abettor. We conclude he is also subject to the flight enhancement.

Section 20001, subdivision (a) provides, "The driver of any vehicle involved in an accident resulting in injury to any person, other than himself or herself, or in the death of any person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004." Section 20001(c), at issue in this case, provides in relevant part: "A person who flees the scene of the crime after *committing* a violation of . . . subdivision (c) of Section 192 . . . of, the Penal Code, upon conviction of . . . th[is] section[], in addition and consecutive to the punishment prescribed, shall be punished by an additional term of imprisonment of five years in the state prison."[2] (Italics added.)

The question here is whether an aider or abettor, like a direct perpetrator, can "commit[]" manslaughter within the meaning of the enhancement. Calhoun argues that by using the term "commit[]," the Legislature limited the enhancement to direct perpetrators and barred its application to aiders and abettors. The argument fails.

■ Both aiders and abettors and direct perpetrators are principals in the commission of a crime. Penal Code section 31 defines "principals" as "[a]ll persons concerned in the commission of a crime, . . . whether they directly commit the act constituting the offense, or aid and abet in its commission . . . ." (See Pen. Code, § 971 ["all persons concerned in the commission of a crime, who by the operation of other provisions of this code are principals therein, shall hereafter be prosecuted, tried and punished as principals . . . ."].) We have observed, "the dividing line between the actual perpetrator and the aider and abettor is often blurred. It is often an oversimplification to describe one person as the actual perpetrator and the other as the aider and abettor. When two or more persons commit a crime together, both may act in part as the actual perpetrator *and* in part as the aider and abettor of the other, who also acts in part as an actual perpetrator." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1120 [108 Cal.Rptr.2d 188, 24 P.3d 1210].) Here it is unnecessary to parse Calhoun's involvement. ■ We conclude that by creating an enhancement for those who flee the scene after "committing"

---

[2] Section 20001(c) provides in full: "A person who flees the scene of the crime after committing a violation of Section 191.5 [gross vehicular manslaughter while intoxicated] of, paragraph (1) or (3) of subdivision (c) of Section 192 [vehicular manslaughter] of, or subdivision (a) or (c) of Section 192.5 [vehicular manslaughter while operating a vessel] of, the Penal Code, upon conviction of any of those sections, in addition and consecutive to the punishment prescribed, shall be punished by an additional term of imprisonment of five years in the state prison. This additional term shall not be imposed unless the allegation is charged in the accusatory pleading and admitted by the defendant or found to be true by the trier of fact. The court shall not strike a finding that brings a person within the provisions of this subdivision or an allegation made pursuant to this subdivision."

manslaughter, the Legislature intended the enhancement to apply to all principals, both aiders and abettors as well as direct perpetrators.

We first consider the statutory language. Nothing in section 20001(c) limits application of the enhancement to direct perpetrators of the underlying crime. Rather, the Legislature enacted an enhancement that applies to any "person who flees the scene of the crime after committing" certain forms of manslaughter. (§ 20001(c).)

Likewise, in *People v. Lee* (2003) 31 Cal.4th 613, 622 [3 Cal.Rptr.3d 402, 74 P.3d 176] (*Lee*), we observed that Penal Code section 664, subdivision (a) referred "three times broadly and generally to 'the person guilty' of attempted murder, . . . not once distinguish[ing] between an attempted murderer who is guilty as a direct perpetrator and an attempted murderer who is guilty as an aider and abettor . . . . Had the Legislature intended to draw a distinction between direct perpetrators and aiders and abettors, it certainly could have done so expressly." (*Lee*, at p. 622, citation omitted.) Attempted murder is of course a substantive crime, not an enhancement. For such crimes, it appears the general law of criminal liability, including aider and abettor liability, remains applicable. (See *Lee*, at p. 626.)

Similarly here, when section 20001(c) refers to "committing a violation of . . . paragraph (1) . . . of subdivision (c) of Section 192 . . . of, the Penal Code," or gross vehicular manslaughter, it is referring to a substantive crime. As in *Lee, supra*, 31 Cal.4th 613, when referring to commission of that crime, the Legislature did not expressly draw a distinction between direct perpetrators and aiders and abettors. General principles of criminal liability, including Penal Code section 31, indicate that both aiders and abettors and direct perpetrators can "commit[]" the substantive crime of gross vehicular manslaughter. Hence both are subject to the Vehicle Code enhancement when they also personally commit the proscribed conduct of fleeing the scene of the crime.

Calhoun generally relies on cases such as *People v. Piper* (1986) 42 Cal.3d 471, 476–477 [229 Cal.Rptr. 125, 722 P.2d 899], and *People v. Walker* (1976) 18 Cal.3d 232, 241–242 [133 Cal.Rptr. 520, 555 P.2d 306], which required a defendant to personally engage in proscribed conduct for an enhancement to attach. In these cases, "we declined to employ the law of criminal liability to remove" the discerned personal conduct requirement for certain enhancements. (*Lee, supra*, 31 Cal.4th at p. 626.)

Certainly the law of criminal liability remains applicable in determining whether a defendant has "committ[ed]" an underlying crime within the meaning of an enhancement. Thus, in *In re Antonio R.* (1990) 226 Cal.App.3d

476, 479 [275 Cal.Rptr. 442], the court concluded the minor defendant was properly punished for his personal use of a firearm even though he was vicariously liable for the murder. Here, aiding and abetting principles establish that Calhoun "committ[ed]" gross vehicular manslaughter. He then personally "fle[d] the scene of the crime after committing" manslaughter, thus satisfying both elements of the enhancement. None of the cases Calhoun cites require that in addition to personally engaging in the conduct warranting an enhanced punishment, the person also be a direct perpetrator of the underlying crime.

An example from a different context illustrates the point. Two robbers enter a bank. The gunman holds everyone at bay while the other empties the cash drawers. Both are guilty of robbery. Under Calhoun's analysis, however, the gunman would not be subject to a firearm use enhancement because he did not personally take the money, but only aided and abetted the taking. Logic and the law are otherwise. (See *People v. Donnell* (1975) 52 Cal.App.3d 762, 767, 778–779 [125 Cal.Rptr. 310].)

Similarly, the Court of Appeal relied in part on the language of Penal Code section 12022, subdivision (a)(1), an enhancement that provides in part, "This additional term shall apply to any person who is a principal in the commission of a felony or attempted felony if one or more of the principals is armed with a firearm, whether or not the person is personally armed with a firearm." This provision does nothing more than allow imposition of the enhancement regardless of which principal is personally armed. In this context, the use of the word "principal" simply describes who can be held liable for the arming. It does not mean that in every other instance when the Legislature uses the words "committing" or "commission" of a crime, it must also use the word "principal" in order to invoke basic principles of criminal liability.

The legislative history of section 20001(c) reveals no intent to limit its application to direct perpetrators of a crime. Calhoun relies on the fact that the bill was enacted in memory of 15-year-old Courtney Cheney, killed by a recidivist drunk driver who fled the scene. (Stats. 1996, ch. 654, § 1, p. 3654; Sen. Com. on Crim. Proc., Analysis of Assem. Bill No. 1985 (1995–1996 Reg. Sess.) as amended July 1, 1996, pp. 3–4.) The Senate committee report pointed out that the enhancement was necessary "because when a person who is DUI flees the scene of an accident where a death has occurred and they are not caught immediately, it is hard if not impossible to later prove that they were DUI. This [enhancement] will create an added deterrence to keep people from fleeing accidents where a death may have occurred." (Sen. Com. on Crim. Proc., Analysis of Assem. Bill No. 1985, *supra*, at p. 6.) However, one can commit gross vehicular manslaughter, the crime for which Calhoun was convicted, without being intoxicated. As the Attorney General notes, "What

Calhoun does is take a precipitating event for legislation and use that event to limit the scope of the law." Furthermore, the state has a valid interest in requiring that principals in the commission of serious vehicular crimes remain at the scene.

## B. Whether the upper terms were supported by the multiple-victim factor

In sentencing Waller, the trial court stated, "[A]s to Counts Three and Four, [the] vehicular manslaughter charges, the Court will impose an upper term of six years. In selecting the upper term, the Court has to weigh circumstances in mitigation as provided by the sentencing rules, as against those in aggravation. And I think the mitiga[ting], in Mr. Waller's case, have already [been] talked about, in some respect, his lack of significant criminal record. And his background[.] [I]n aggravation, the Court would cite that this defendant was convicted of other crimes for which consecutive sentences could have been imposed, and there are separate victims of the crime involving violence. I am using that aggravating factor as a basis for imposing the aggravated term. I think it outweighs all of the mitigation referred to by counsel and by the probation department. I am ordering terms to run concurrently."

The trial court's statement is ambiguous as to whether it is relying on both the fact that there were multiple victims and the fact that consecutive sentences could have been but were not imposed. Waller assumes, as did the Court of Appeal, that the trial court was relying on both, and that imposition of the upper term as to both counts would have been proper had the trial court instead relied solely on the fact that consecutive sentences could have been but were not imposed. He contends that the trial court's reliance on the multiple-victim factor was improper because that factor does not apply when the victims are each named in separate counts. We reject that argument. To the extent the trial court relied on the multiple-victim factor, that reliance was proper.

■ California Rules of Court,[3] rule 4.421 provides, "Circumstances in aggravation include facts relating to the crime," whether or not charged or chargeable as enhancements. Before 1991, rule 421(a)(4) provided that one of these facts was that "[t]he crime involved multiple victims." Effective January 1991, this factor was deleted from the rule. The advisory committee comment noted, "Former subdivision (a)(4), concerning multiple victims, was deleted to avoid confusion; cases in which that possible circumstance in aggravation was relied on were frequently reversed on appeal

---

[3] All further references to rules are to the California Rules of Court.

because there was only a single victim in a particular count." Defendant does not argue that deletion of the factor precludes the trial court's reliance on it.[4] Rule 4.408(a) provides, "The enumeration in these rules of some criteria for the making of discretionary sentencing decisions does not prohibit the application of additional criteria reasonably related to the decision being made. Any such additional criteria must be stated on the record by the sentencing judge."

In *Cunningham v. California* (2007) 549 U.S. __ [166 L.E.2d 856, 127 S.Ct. 856] (*Cunningham*), the high court held that California's determinate sentencing law violates a defendant's Sixth and Fourteenth Amendment right to a jury trial to the extent it permits a trial court to impose an upper term based on facts found by the court rather than by a jury beyond a reasonable doubt. This case does not implicate *Cunningham* because in convicting Waller of two counts of gross vehicular manslaughter, and two counts of reckless driving causing bodily injury, the jury necessarily found there were multiple victims.

Waller contends that the fact of multiple victims is properly relied on by the trial court when the charges identifying other victims have been dismissed or the crimes are uncharged. He asserts, however, that the factor is improperly relied on when each count of which the defendant was convicted names only one victim. There is no persuasive argument to support this distinction.

We first consider the cases involving dismissed charges. In *People v. Harvey* (1979) 25 Cal.3d 754, 757 [159 Cal.Rptr. 696, 602 P.2d 396] (*Harvey*), the defendant pled guilty to two robbery counts. We held that the trial court improperly considered and relied on the facts underlying an unrelated and dismissed third robbery count to impose the upper term. (*Id.* at pp. 757–759.) We observed that although *People v. Guevara* (1979) 88 Cal.App.3d 86, 92–94 [151 Cal.Rptr. 511] (*Guevara*), "upheld the authority of the sentencing court to take into account certain facts underlying charges dismissed pursuant to a plea bargain, those facts were also *transactionally related* to the offense to which defendant pleaded guilty. As the *Guevara* court carefully explained, 'The plea bargain does not, expressly or by implication, preclude the sentencing court from reviewing all the circumstances relating to Guevara's *admitted* offenses to the legislatively mandated end that a term, lower, middle or upper, be imposed on Guevara commensurate with the gravity of his crime.' " (*Harvey*, at p. 758.) By contrast, in sentencing Harvey, the court relied on a

---

[4] Former rule 425(a)(4) provided that a court could consider in determining whether to impose consecutive sentences whether "[a]ny of the crimes involved multiple victims." Rule 425(a)(4) was also deleted as of January 1, 1991.

dismissed robbery count unrelated to, and wholly separate from, the crimes Harvey admitted as part of the plea bargain.[5] (*Harvey*, at pp. 758–759.)

In *Guevara, supra*, 88 Cal.App.3d at page 89, the defendant ordered a mother and her son into a car at gunpoint, then forced her to drive to a different location. After Guevara pleaded guilty to kidnapping the son, the allegation of the mother's kidnapping was dismissed. (*Id.* at pp. 88, 93.) The trial court relied on the existence of multiple victims to impose the upper term. The Court of Appeal affirmed, noting both the mother and the son were abducted. "No amount of sophistry will make this fact anything but a 'circumstance'—an aggravating 'circumstance' of the kidnaping of [the son]. It has long been the law that the sentencing court must consider all of the attendant circumstances of the crime of which the defendant has been convicted." (*Id.* at p. 93.) Similarly, in *People v. Klaess* (1982) 129 Cal.App.3d 820, 821–823 [181 Cal.Rptr. 355], the court held that the trial court properly considered two dismissed murder counts in imposing the upper term for conviction of accessory after the fact, stating the murders "were inseparably and integrally a part of defendant's admitted offense." (See *People v. Blade* (1991) 229 Cal.App.3d 1541, 1543–1545, 1547 [281 Cal.Rptr. 161]; *People v. Cortez* (1980) 103 Cal.App.3d 491, 494–496 [163 Cal.Rptr. 1].)

Two cases, both from the Fifth District Court of Appeal, have addressed the situation presented here, reliance on a multiple-victim factor when each victim is named in a separate count. Neither case provides extended analysis. In *People v. Burney* (1981) 115 Cal.App.3d 497, 502 [171 Cal.Rptr. 329], the defendant fired shots in a bar, killing one person, and wounding another. She was convicted of voluntary manslaughter and assault with a deadly weapon. (*Ibid.*) The Court of Appeal held the trial court had properly relied on the multiple-victim factor in imposing the upper term "because the crimes were transactionally related." (*Id.* at p. 505.) In *People v. McNiece* (1986) 181 Cal.App.3d 1048, 1053–1054 [226 Cal.Rptr. 733], the defendant caused a motoring accident, killing one person and severely injuring another. The court held that because the gross vehicular manslaughter count involved only one victim, it was improper to rely on the multiple-victim circumstance "as a possible aggravating factor."[6] (*McNiece*, at p. 1061.)

---

[5] Of course, a defendant may agree as part of a plea bargain that the trial court may consider at sentencing the facts of unrelated dismissed or uncharged crimes. (*People v. Goulart* (1990) 224 Cal.App.3d 71, 80 [273 Cal.Rptr. 477].)

[6] Several cases have upheld the use of the multiple-victim factor to impose consecutive sentences when each of the victims was named in a separate count if the crimes were transactionally related. (See, e.g., *People v. Valenzuela* (1995) 40 Cal.App.4th 358, 360, 365 [46 Cal.Rptr.2d 715]; *People v. Birmingham* (1990) 217 Cal.App.3d 180, 185 [265 Cal.Rptr. 780]; see also *People v. Murray* (1990) 225 Cal.App.3d 734, 749–750 [275 Cal.Rptr. 498]; *People v. Bejarano* (1981) 114 Cal.App.3d 693, 705, fn. 1 [173 Cal.Rptr. 71].) Other cases, relying on the language of former rule 425(a)(4), or cases that had interpreted that language, held that

Here, of course, the jury *convicted* Waller of multiple counts involving different victims, making this case even stronger than *Harvey, supra,* 25 Cal.3d 754. Regardless of whether *Harvey* and its progeny survive *Cunningham,* because the jury here found beyond a reasonable doubt that Waller committed crimes against four separate victims, and hence that the crimes involved multiple victims, Waller was not deprived of his jury trial right.

█ Waller contends that unlike a case in which charges are dismissed, each of the victims here is listed in a separate count, and hence was necessarily considered at the time of sentencing. Thus, he asserts, the sentence for each offense will already be proportionate to the seriousness of that offense. (Pen. Code, § 1170, subd. (a)(1).) However, Waller's single act of violence caused either the death or serious injury of four people. The gravity of and his culpability for this offense is increased by the number of those he harmed. " 'A defendant who commits an act of violence . . . by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person.' " (*People v. Oates* (2004) 32 Cal.4th 1048, 1063 [12 Cal.Rptr.3d 325, 88 P.3d 56].) He is therefore properly subject to increased punishment for each gross vehicular manslaughter count.

Nor should the trial court's sentencing discretion be limited, as Waller suggests, to imposing consecutive sentences. There is no persuasive reason why the trial court should not be allowed to consider the fact of multiple victims as a basis for imposing either the upper term or a consecutive sentence, although it cannot do both. (Rule 4.425(b)(1).)

### III. DISPOSITION

The Court of Appeal's judgment is reversed and the case remanded to that court with instructions to reinstate the true findings on the section 20001(c) allegations against Calhoun, and the two 6-year terms imposed on Waller.

George, C. J., Baxter, J., Chin, J., and Moreno, J., concurred.

**KENNARD, J.,** Concurring.—I agree with the majority that the five-year enhancement under Vehicle Code section 20001, subdivision (c), for "[a]

consecutive sentences were not properly imposed when only one victim was named in each count. (See, e.g., *People v. Levitt* (1984) 156 Cal.App.3d 500, 514, 517 [203 Cal.Rptr. 276]; *People v. Humphrey* (1982) 138 Cal.App.3d 881, 882 [188 Cal.Rptr. 473], overruling *People v. Fowler* (1980) 109 Cal.App.3d 557, 566–567 [167 Cal.Rptr. 235]; see also *People v. Arviso* (1988) 201 Cal.App.3d 1055, 1059–1060 [247 Cal.Rptr. 559]; *People v. Floyd P.* (1988) 198 Cal.App.3d 608, 613 [244 Cal.Rptr. 269].)

person who flees the scene of the crime after committing" gross vehicular manslaughter may apply to an aider and abettor. I also agree with the majority that in sentencing defendant George Kenneth Waller, Jr., the trial court's explanation for imposing the upper term for each of the two manslaughter counts, which included the statement that there were "separate victims of the crime involving violence," did not constitute reversible error. I write separately to explain my understanding of the legal basis for the latter holding.

The jury convicted defendant Waller of two counts of vehicular manslaughter with gross negligence (Pen. Code, § 192, subd. (c)(1)) and two counts of misdemeanor reckless driving with bodily injury (Veh. Code, § 23104, subd. (a)). The trial court sentenced Waller to the upper term of six years on each of the manslaughter counts and to 180 days on each of the misdemeanor counts, all terms to run concurrently, resulting in a total term of six years. When it imposed the upper terms on the manslaughter counts, the court said that it found mitigating factors in Waller's lack of significant criminal record and his background. The court then gave this explanation for the upper terms: "[T]his defendant was convicted of other crimes for which consecutive sentences could have been imposed, *and* there are *separate victims* of *the crime* involving violence. I am using *that aggravating factor* as a basis for imposing the aggravated term. I think *it* outweighs all of the mitigation referred to by counsel and by the probation department." (Italics added.)

As the majority points out (maj. opn., *ante*, at p. 405), the trial court's statement is ambiguous, but the majority does not fully explain the ambiguity. The Court of Appeal construed the trial court's statement as providing two distinct reasons for imposing the upper term—because defendant had been "convicted of other crimes for which consecutive sentences could have been imposed," and, secondly, because "there are separate victims of the crime involving violence." But the court's next sentence, referring to "that aggravating factor" and asserting that "it" outweighed the factors in mitigation, belied the suggestion in the first sentence that the court was relying on two different aggravating factors.

In my view, the ambiguity in the trial court's statement of reasons is best resolved by construing the quoted language as stating a single aggravating factor with two components. What the trial court most likely was saying was that it was an aggravating factor that defendant Waller had been convicted of other crimes for which concurrent sentences were being imposed *even though* those other crimes could have been sentenced consecutively *because* they

were crimes of violence against other victims. The reference to "separate victims" was merely to explain why consecutive sentences could have been imposed on the various counts even though all counts resulted from a single incident. (See *People v. Champion* (1995) 9 Cal.4th 879, 934 [39 Cal.Rptr.2d 547, 891 P.2d 93] ["When a defendant engages in violent conduct that injures several persons, he may be separately punished for injuring each of those persons . . ."].)

Significantly, the trial court said there were "separate" victims, not "multiple" victims. What separated the victims from each other was that each was the subject of a different count, and no count involved more than one victim, as the trial court was well aware. The trial court introduced an element of uncertainty, however, by saying there were "separate victims of *the crime* involving violence." (Italics added.) The trial court may have simply misspoken, intending to say "crimes" rather than "crime," or the court may have intended here to refer to the entire incident as "the crime."

In any event, even if one were to assume for the sake of argument that the trial court intended the reference to "separate victims of the crime" as a second, distinct aggravating factor, and that the trial court erred in so doing, the error was not prejudicial. "When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper." (*People v. Price* (1991) 1 Cal.4th 324, 492 [3 Cal.Rptr.2d 106, 821 P.2d 610].) "Only a single aggravating factor is required to impose the upper term." (*People v. Osband* (1996) 13 Cal.4th 622, 728 [55 Cal.Rptr.2d 26, 919 P.2d 640].) Here, defendant Waller's criminal recklessness resulted in the death of two people and serious injuries to two others. The trial court exercised great leniency in imposing concurrent sentences on the four counts of which defendant was convicted, and it reasonably counterbalanced that leniency by imposing upper term sentences on the two manslaughter counts. Nothing in the record suggests that the trial court was confused or mistaken about the relevant facts or that the court's discretionary sentencing choices were based on a mechanical counting of aggravating and mitigating factors rather than on the trial court's appraisal of the seriousness of defendant Waller's conduct. On this record, it is not reasonably probable that the trial court would have chosen a lesser sentence had it understood that "separate victims" could not constitute a distinct and additional aggravating factor.

I do not understand the court's decision in this case as providing authority for treating separate or multiple victims as an aggravating factor in situations materially different from this one, such as when the trial court imposes consecutive sentences on multiple counts, each involving a single victim. On this basis, I concur in the majority opinion.

Werdegar, J., concurred.