Filed 2/21/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br>ERIC RODNEY BEMAN,<br><br>        Defendant and Appellant. | A153841<br><br>(Contra Costa County<br>Super. Ct. No. 5-152089-9) |

Defendant pleaded no contest to one count of conspiracy to commit human trafficking based on allegations that for more than seven years, he and his coconspirators used threats, force, and violence in pimping at least three victims. Defendant also pleaded no contest to two counts of human trafficking for his conduct against one of the victims in 2011. For all three counts, the trial court sentenced defendant to 16 years, eight months in prison.

Defendant's sole claim on appeal is that the two consecutive terms imposed for the two substantive human trafficking counts must be stayed under Penal Code[1] section 654. We reject the claim because defendant's conspiracy to commit human trafficking had broader objectives and involved more victims than the two substantive offenses. Accordingly, we affirm.

---

[1] Further statutory references are to the Penal Code.

1

# FACTUAL AND PROCEDURAL BACKGROUND

A.   *Facts*[2]

Defendant Eric Rodney Beman and codefendant Roy Gordon worked together as pimps, and they referred to themselves as "brothers." Codefendant Derrick Harper was also a pimp and would kidnap women and then draw up "contracts" requiring they act as prostitutes to pay money he claimed they owed him. Defendant, Gordon, and Harper all used violence to keep prostitutes working for them, and they sometimes "sold" or "traded" prostitutes with each other.

The victim referred to in the information as Victim 3[3] met defendant and Gordon in about 2006 or 2007. When she first met defendant, he forced her to prostitute for him. On one occasion, defendant put her in a closet, then took her out of the closet, wrapped her in a blanket, and beat and choked her until she lost consciousness. Later, Victim 3 began prostituting for Gordon. When she tried to leave him in September 2007, he burned her leg twice with a clothing iron, and she could not walk for a week. On another occasion, Victim 3 tried to get away from Gordon, and he grabbed her by the hair, pulled her out of a car, took her back to a house, locked her in a room, and then burned her with a hair iron.

In 2007, Victim 2 learned Gordon had "purchased" her from another pimp in exchange for methamphetamine. She worked as a prostitute for Gordon and he gave her methamphetamine. In 2009, Victim 2 met Harper and they began dating. Harper punished Victim 2 when she allowed one of his prostitutes to escape by having three men rape her, anally raping her himself, and having her head shaved. Harper then "sold" Victim 2 to defendant.

In 2006, Victim 1, who was already working as a prostitute, chose defendant and Gordon to act as her pimps. In 2010 or 2011, she began prostituting for Harper. Harper

---

[2] The facts are taken from the transcript of defendant's preliminary hearing, which his attorney later stipulated provided the factual basis for his no contest pleas.

[3] The other two victims were referred to as Victim 2 and Victim 1.

regularly beat Victim 1 and threatened to hurt her son.  Defendant and Harper had a meeting to determine whose "property" Victim 1 was.  Defendant "traded" for Victim 1, giving Harper Victim 2 in exchange.

B.  *The Prosecution*

In a 24-count information, the Contra Costa County District Attorney charged defendant and five others with conspiracy to commit human trafficking (§§ 182, subd. (a)(1), 236.1, subd. (b); count 1).  The district attorney alleged in great detail a total of 51 overt acts committed by the various six defendants against Victims 1, 2 and 3, and other women working as prostitutes.  Defendant was also charged with two counts of the substantive crime of human trafficking of Victim 1 (§ 236.1, subd. (b); counts 14 and 17).

C.  *Defendant's Change of Plea and Admissions*

Defendant eventually agreed to plead no contest to the information as charged with a maximum potential sentence of 31 years, four months in prison.[4]

1.  Count 1—Conspiracy and Overt Acts

In count 1, defendant pleaded no contest to a conspiracy with the five named codefendants to commit human trafficking lasting from January 2006 to April 2013 and admitted nine of the alleged overt acts were true.  As to Victim 3, defendant admitted that, in 2006, he acted as her pimp, beat her multiple times, and on one occasion "forcibly held [her] captive . . . and directed other women . . . to beat her if she attempted to leave." (Overt Acts 2–4.)  He admitted that he and codefendant Gordon worked in concert to control and assault the prostitutes they were pimping and pandering, and that, in September 2007, he told Victim 3 she had to earn $10,000 for Gordon before she would be allowed to leave with defendant.  (Overt Acts 5, 12.)  As to Victim 2, defendant admitted that, in 2010, he "searched [a] house for (Victim Two) as she hid in the clothes dryer."  (Overt Act 39.)  And, as to Victim 1, defendant admitted that, in July 2011, he confronted her about prostituting for codefendant Harper, punched her repeatedly and hit

---

[4] At sentencing, the trial court observed that it calculated a maximum exposure of 24 years, eight months.

her over the head with a bottle cutting her scalp, and forcibly prevented her from leaving with Harper, telling Victim 1 "that she now belonged to him." (Overt Acts 41, 43.) He further admitted that, "[o]n or about November through December 2011 [defendant] confronted . . . Harper at gunpoint telling Mr. Harper that (Victim One) was now prostituting for [defendant] while (Victim One) retrieved her belongings from Harper's residence." (Overt Act 48.)

### 2. Counts 14 and 17—Human Trafficking of Victim 1

Defendant also pleaded no contest to count 14, human trafficking of Victim 1 around July 2011, and count 17, human trafficking of Victim 1 "between November 1, 2011 and December 31, 2011."

### D. *Sentence*

The trial court imposed the middle term of 14 years for count 1 (conspiracy to commit human trafficking) and two consecutive 16-month terms (one-third the middle term of four years) for counts 14 and 17 (human trafficking of Victim 1), for a total sentence of 16 years, eight months in prison.

### DISCUSSION

Defendant contends section 654[5] precludes the imposition of punishment for the two substantive offenses of human trafficking in addition to the punishment for conspiracy to commit human trafficking. We disagree.

This court has explained: "Because of the prohibition against multiple punishment in section 654, a defendant may not be sentenced 'for conspiracy to commit several crimes and for each of those crimes where the conspiracy had no objective apart from those crimes. If, however, a conspiracy had an objective apart from an offense for which the defendant is punished, he may properly be sentenced for the conspiracy as well as for that offense.' [Citations.] Thus, punishment for both conspiracy and the underlying

---

[5] Section 654, subdivision (a), provides, in relevant part, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

4

substantive offense has been held impermissible when the conspiracy contemplated only the act performed in the substantive offense [citations] or when the substantive offenses are the means by which the conspiracy is carried out [citation].)" (*People v. Ramirez* (1987) 189 Cal.App.3d 603, 615, disapproved on another point in *People v. Russo* (2001) 25 Cal.4th 1124, 1137.)  On the other hand, "[p]unishment for both conspiracy and substantive offenses has been upheld when the conspiracy has broader or different objectives from the specific substantive offenses."  (*Id*. at pp. 615–616.)  The court elaborated that punishment for both conspiracy and underlying substantive offenses is permissible when the conspiracy "encompasses a number of acts, only some of which are punished independently as substantive offenses."  (*Id*. at p. 616.)  Section 654 only bars multiple punishment when the "conspiracy has multiple objects and *all* are punished as substantive offenses, [or] . . . when the conspiracy has but one object which is punished as a substantive offense."  (*Ibid*.)

*People v. Vargas* (2001) 91 Cal.App.4th 506 (*Vargas*) and *People v. Collins* (1966) 242 Cal.App.2d 626 illustrate when it is permissible to punish a defendant for conspiracy to commit a criminal offense *and* for committing that criminal offense in a particular instance.  In *Vargas*, the defendant was convicted of conspiracy to commit murder and the murder of Elias Rosas.  (*Vargas*, at pp. 517–518.)  The defendant argued he could not be punished for both conspiracy to commit murder and murder under section 654.  But the Court of Appeal rejected the argument on the ground the defendant's gang "conspired to kill not only Rosas, but other persons as well."  (*Id*. at p. 571.)  Thus, in *Vargas*, punishment for both conspiracy to commit murder and murder was permissible because the defendant's conspiracy to commit murder had broader objectives (additional victims) than the substantive offense of the murder of Rosas.  Similarly, in *Collins*, the court held section 654 did not preclude sentencing the defendant for a count of conspiracy to commit theft and for six counts of theft because "the conspiracy which was alleged and proved had objectives *going beyond* the six thefts for which defendant was convicted."  (*Collins*, at p. 640, italics added; see also *People v. Amadio* (1971) 22 Cal.App.3d 7, 9–10, 15 (*Amadio*) [punishment for both conspiracy to receive stolen

property and receiving stolen property was permissible where the conspiracy involved receipt of more property than just the property related to the individual counts; "Appellants were not being punished for a conspiracy which had as its only objective the commission of the other offenses charged."].)

Here, defendant's convictions for two counts of human trafficking (counts 14 and 17) relate to Victim 1 and to acts that occurred in 2011. But the objectives of defendant's conspiracy with his codefendants to commit human trafficking went far beyond the specific conduct for which defendant was convicted in counts 14 and 17. Stated differently, it is not the case that defendant's conspiracy had as its *only objective* the commission of human trafficking of Victim 1 in July, November, and December of 2011. (See *Amadio*, *supra*, 22 Cal.App.3d at p. 15.) Instead, the conspiracy involved conduct spanning from 2006 to 2013 and, crucially, involved two victims in addition to Victim 1 (the sole victim in counts 14 and 17). (See *Vargas*, *supra*, 91 Cal.App.4th at p. 571.) As a result, section 654 does not bar punishment for both count 1, conspiracy to commit human trafficking, and counts 14 and 17, the substantive offenses of human trafficking in this case.

For his position, defendant relies on *People v. Briones* (2008) 167 Cal.App.4th 524 (*Briones*), but the facts of that case are easily distinguished. There, defendant Briones borrowed money from a friend to buy heroin and methamphetamine and then bought the two drugs. Briones was convicted of two counts of possession of drugs for sale (one count for each drug) and two counts of conspiracy to possess drugs for sale (again, one count for each drug). He was sentenced for all four offenses. (*Id*. at pp. 526–527.) On appeal, Briones argued section 654 barred punishment for both conspiracy to possess drugs and the two substantive drug offenses because the objective of the

conspiracy was to commit the two drug offenses.[6] (*Id*. at p. 528.) The court agreed with Briones and stayed the punishment for the conspiracy count. (*Id*. at p. 529.)[7]

In *Briones*, the conspiracy had no objective apart from commission of the two drug offenses (that is, possessing for sale the heroin and methamphetamine purchased with the money borrowed from Briones's friend). There was, for example, no allegation of a broader conspiracy with the friend to buy different types of drugs or to obtain additional drugs at a later time. In contrast, defendant's conspiracy to commit human trafficking in this case was much broader than an agreement to commit human trafficking of Victim 1 in 2011, as alleged in substantive counts 14 and 17. As we have seen, the conspiracy here involved the use of force and violence to pimp at least three victims for more than seven years. Defendant's reliance on *Briones* is misplaced.

Because defendant's conspiracy was not limited to committing the two substantive offenses, the trial court did not err in imposing consecutive terms for counts 14 and 17.

### DISPOSITION

The judgment is affirmed.

---

[6] Initially, the Court of Appeal struck one of the two conspiracy counts, agreeing with the parties that the trial court erred in sentencing Briones for two counts of conspiracy because there was only a single conspiracy (to possess both drugs). (*Briones*, *supra*, 167 Cal.App.4th at p. 528.)

[7] However, the court found no error in the trial court refusing to stay one of the substantive drug counts under section 654. The court reasoned that it could be inferred from Briones's possession of large amounts of two types of drugs that he intended multiple sales to different customers. (*Briones*, *supra*, 167 Cal.App.4th at p. 529.)

_____
Miller, J.

We concur:


_____
Richman, Acting P.J.


_____
Stewart, J.


A153841, *People v. Beman*

Trial Court: Superior Court of Contra Costa County

Trial Judge: Hon. John W. Kennedy

Law Office of Paul F. DeMeester, Paul F. DeMeester, under appointment by the Court of Appeal, for Defendant and Appellant

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Bruce L. Ortega and Rene A. Chacon, Deputy Attorneys General, for Plaintiff and Respondent

A153841, *People v. Beman*