Filed 12/6/24  P. v. Saenz CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>VALERIE SAENZ,<br><br>     Defendant and Appellant. | A169143<br><br>(Sonoma County<br> Super. Ct. No. SCR758131-2) |

Defendant Valerie Saenz pleaded no contest to a number of criminal charges, including conspiracy to commit robbery, attempted robbery, and shooting at an occupied motor vehicle.  The trial court sentenced her to a total of nine years in prison.  On appeal, defendant challenges her sentence, arguing:  (1) the trial court abused its discretion in imposing consecutive rather than concurrent sentences; (2) the court improperly relied on aggravating circumstances to which she never admitted; and (3) the court should have stayed some of the sentences pursuant to Penal Code section 654.[1]

---

[1]     All further undesignated statutory references are to the Penal Code.

The People concede that one of the sentences should have been stayed. We accept that concession and will stay part of defendant's sentence. In all other respects we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The People charged defendant and co-defendant Marcell Battiest by information with: conspiracy to commit robbery (§ 182, subd. (a)(1), count 3); attempted second degree robbery (§§ 211, 664, count 4); shooting at an occupied motor vehicle (§ 246, count 5); and assault with a semiautomatic firearm (§ 245, subd. (b), counts 6 and 7). The People charged defendant alone with destroying evidence (§ 135, count 11). The People further alleged as to counts 3 and 4 that a principal was armed during the offense (§ 12022, subd. (a)(1)), and also alleged a number of aggravating circumstances as to defendant. The People charged Battiest alone with various other counts and enhancements.

The evidence at the preliminary hearing included the following. S.M.—who had known defendant since middle school—told defendant he had about 30 pounds of marijuana for sale. Defendant and Battiest, who had been planning to rob another individual, ultimately agreed to rob S.M. Defendant told Battiest they needed a gun, and Battiest indicated he would obtain one. Defendant then told S.M. she had someone who wanted to buy all his marijuana and lured S.M. to a parking lot, ostensibly to make the sale. S.M. and one of his friends, J.G.P., drove to the parking lot, which was near various businesses, a hotel, and a large residential apartment complex. After defendant and Battiest arrived and looked at the marijuana, Battiest—without provocation or warning—shot J.G.P. and then shot S.M. as S.M. ran back to his car. S.M. was able to drive away, and defendant and Battiest were unsuccessful in taking anything. S.M. was hospitalized for about a

2

week to a week and a half, and J.G.P. was hospitalized for nearly a month. After the incident, defendant deleted messages she had sent the victim regarding the drug deal.

Defendant pleaded no contest to all of the counts alleged against her and admitted the section 12022, subdivision (a)(1), enhancements. She further admitted the aggravating circumstances set out in California Rules of Court, rule 4.421(a)(1), (3), (4), (7), (8) and (b)(1).[2] The defense asked the trial court to accept the preliminary hearing evidence as the factual basis for the plea, and the court agreed.

The trial court sentenced defendant to a total term of nine years in prison. Specifically, the court imposed the middle term of six years on count 6, noting that there were both aggravating and mitigating factors, but that the aggravating factors were "extreme in the amount of violence that was inflicted." With regard to count 7, the court imposed a two-year consecutive term because it involved "a completely separate victim" and both victims "were extremely harmed and continue to suffer from their injuries." The court also imposed a one-year consecutive term for count 3, but struck the term for the attendant section 12022, subdivision (a)(1), enhancement. Finally, the court imposed concurrent terms on counts 4 and 11, and stayed the sentence on count 5 pursuant to section 654. Defendant appealed.

## DISCUSSION

### A. Consecutive Sentences

Defendant contends the trial court abused its discretion in imposing consecutive rather than concurrent sentences for her convictions on counts 6 and 7, the crimes of assault with a semiautomatic firearm against S.M. and J.G.P., respectively. In particular, she argues the court erred in relying on

---

[2] All further rule references are to the California Rules of Court.

3

the fact that she was convicted of multiple counts involving different victims because she "was not the shooter and had no gun in her hand."

Initially, we address the People's contention that defendant forfeited this sentencing claim because she did not object on this ground below. "A party in a criminal case may not, on appeal, raise 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' if the party did not object to the sentence at trial. [Citation.] The rule applies to 'cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons' [citation], but the rule does not apply when the sentence is legally unauthorized [citation]." (*People v. Gonzalez* (2003) 31 Cal.4th 745, 751 (*Gonzalez*), quoting *People v. Scott* (1994) 9 Cal.4th 331, 353–354.) A forfeiture may be found only where there was " 'a meaningful opportunity to object' " during the course of the sentencing hearing, i.e., where parties were " 'clearly apprised of the sentence' " the court intended to impose and the reasons supporting its discretionary choices. (*Gonzalez*, at p. 751, italics omitted.)

Here, defendant's claim concerns the stated reasons for the court's discretionary sentencing choice. A review of the record discloses the court announced the reasons for the sentence and provided defendant with an opportunity to make objections, but she made none. As such, the claim was forfeited. (See, e.g., *People v. Sperling* (2017) 12 Cal.App.5th 1094, 1101–1102 (*Sperling*) [" 'meaningful opportunity to object' " found when, after pronouncing sentence, the court asked if there was any other record the parties wished to make but appellant's counsel remained silent].)

4

But even if defendant had made the appropriate objection, we would conclude she has not established an abuse of discretion.

" 'Section 669 grants the trial court broad discretion to impose consecutive sentences when a person is convicted of two or more crimes.' " (*People v. Leon* (2010) 181 Cal.App.4th 452, 467.) " ' "The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary." ' " (*Sperling*, *supra*, 12 Cal.App.5th at p. 1103.) Rule 4.421 sets out various circumstances in aggravation that may be considered in deciding whether to impose consecutive rather than concurrent sentences. (Rules 4.421, 4.425(b).) "Only a single aggravating factor is required to . . . impose a consecutive sentence." (*People v. Osband* (1996) 13 Cal.4th 622, 728–729.)

The aggravating circumstances enumerated in the rules are not intended to be exhaustive. "Any other factors statutorily declared to be circumstances in aggravation or which reasonably relate to the defendant or the circumstances under which the crime was committed" can be a circumstance in aggravation. (Rule 4.421(c).) However, "[a]ny such additional criteria must be stated on the record by the sentencing judge." (Rule 4.408(a).)

In *People v. Calhoun* (2007) 40 Cal.4th 398 (*Calhoun*), the high court held it permissible for a trial court to consider the fact that a crime involved multiple victims (hereafter the "multiple victim factor") as a circumstance justifying imposition of an upper term *or* a consecutive sentence, even where the victims are named in separate counts. (*Calhoun*, at pp. 405–408.) This is so even though the multiple victim factor had been removed as an enumerated aggravating circumstance from the California Rules of Court. (*Calhoun*, at pp. 405–406 & fn. 4.)

5

In *Calhoun*, *supra*, 40 Cal.4th 398, the California Supreme Court emphasized that the gravity of a single act of violence causing either the death or serious injury of multiple victims, as well as the defendant's culpability therefor, is increased by the number of victims harmed. (*Calhoun*, at p. 408.) In affirming the imposition of upper terms on two gross vehicular manslaughter counts where the defendant's single act resulted in the deaths of two people and serious injury to two others, the *Calhoun* court reasoned that one who commits an act of violence by a means likely to cause harm to several persons is " ' "more culpable than a defendant who harms only one person." ' " (*Id.* at pp. 400–401, 408, italics added.) In such cases, the defendant is "properly subject to increased punishment for each gross vehicular manslaughter count." (*Id.* at p. 408.) Because multiple victims were harmed, the court concluded the trial court could impose either the upper terms for each count or a consecutive sentence, regardless of whether the victims were named in separate counts. (*Ibid.*)

Here, not only was defendant convicted by plea of two separate counts of assault with a semiautomatic firearm against two separate victims, S.M. and J.G.P., but the counts involved two separate shootings, albeit shootings that occurred in a single incident. Thus, the trial court could properly impose consecutive sentences on those counts because both of the victims experienced extreme harm and continue to suffer from their shooting injuries. As defendant acknowledges, *Calhoun*, *supra*, 40 Cal.4th 398, allows the imposition of an upper term sentence *or* a consecutive sentence based on convictions of multiple counts involving different victims.

Defendant attempts to resist the holding in *Calhoun*, *supra*, 40 Cal.4th 398, by arguing she was not the shooter. But another court has already rejected a similar argument. (*People v. Caesar* (2008) 167 Cal.App.4th 1050,

1059–1061 (*Caesar*), disapproved on other grounds as stated in *People v. Superior Court* (*Sparks*) (2010) 48 Cal.4th 1, 18.) *Caesar* involved an incident that arose when Caesar's car was hit by friends of Clayton, the teenage son of Caesar's girlfriend. (*Caesar*, at p. 1055.) Caesar told Clayton he would return with others to teach Clayton a lesson. (*Ibid.*) Two hours later, while Clayton was home with some friends, Caesar returned with four men, some of whom had guns. Though Caesar did not shoot, his cohort Godbolt fired shots that killed one person and injured others. (*Ibid.*) Caesar was tried and convicted for aiding and abetting an assault and battery, with the natural and probable consequences being the crimes committed by Godbolt. (*Id.* at pp. 1053–1054.) Relying on *Calhoun*, the Court of Appeal rejected Caesar's argument that the court erred in imposing consecutive sentences based on the multiple victim factor. (*Id.* at p. 1061.)

In eschewing Caesar's further argument that he should not have received consecutive sentences because he was convicted based on the natural and probable consequences doctrine and did not shoot at the victims but only aided and abetted the assault and battery, the Court of Appeal explained: "As our Supreme Court made clear in *Calhoun*, the relevant culpable factor is not that a defendant engaged in multiple criminal *acts*; instead, the 'gravity of and his culpability for [the] offense is increased *by the number of those he harmed*.' [Citation.] This reasoning applies equally to Caesar, who aided and abetted an assault and battery, and Godbolt, who was the shooter. Both men engaged in wrongful conduct that resulted in harm to *multiple victims*. Accordingly, the trial court properly imposed consecutive sentences for both Godbolt and Caesar." (*Caesar*, *supra*, 167 Cal.App.4th at p. 1061.)

Defendant contends *Caesar* is distinguishable because there was no evidence here that she knew S.M. would bring another person. But *Caesar*

described the relevant factor of culpability as the circumstance that the defendant's conduct harmed multiple victims, not whether the defendant foresaw that multiple victims would be present and harmed. (*Caesar*, *supra*, 167 Cal.App.4th at p. 1061.) The *Caesar* court did not discuss whether Caesar knew, when he went to confront Clayton, that Clayton would have friends with him. Likewise in *Calhoun*, the Supreme Court did not focus on whether Waller had prior knowledge that the car he hit while drag racing had multiple passengers in it. (*Calhoun*, *supra*, 40 Cal.4th at pp. 405–408.) In any event, the crimes in this case took place on a Friday night in a parking lot that was surrounded by businesses, a hotel, and a large residential apartment complex. There was even surveillance footage of a nearby occupied car within minutes of the crimes. Consequently, it was reasonably foreseeable that some member of the public (if not a companion brought by S.M.) could have been hurt by the armed robbery at issue.

In sum, the trial court did not err or abuse its discretion in imposing consecutive sentences on counts 6 and 7.

## B.  Mid-Term on Count 6

Next, defendant claims that she never admitted the aggravating circumstances alleged against her, and that she only waived her right to a jury trial on them. Consequently, she argues, the trial court erred in imposing the midterm on count 6 after weighing the aggravating factors against the mitigating factors. This is meritless.

The record undermines defendant's claim that she did not admit the aggravating circumstances. At defendant's change of plea hearing, the following colloquy occurred:

8

"THE COURT:  Further, there are aggravating factors alleged on the Information.  Do you admit or waive Jury so that the Court may consider aggravating factors Rule 4.41(a)—

"[Defense Counsel]:  (a)(1) and—

"[Prosecutor]:  (a)(1), (a)(3), (a)(4), (a)(7), (a)(8) and (b)(1).

"THE COURT:· Do you waive Jury on those factors *so the Court may consider them*?  [(Italics added.)]

"THE DEFENDANT:  Yes.

"THE COURT:  Thank you."

While perhaps the wording could have been clearer, this colloquy demonstrates that defendant admitted the listed aggravating circumstances so as to permit the court to consider them in sentencing.  Her admissions are confirmed by numerous other portions of the record.  Significantly, defendant's own sentencing memorandum explicitly states she admitted the aggravating factors.  Moreover, defendant's plea form, as well as the minute order for the change of plea hearing, reflects that her plea included her admission to the aggravating circumstances set out in rule 4.421(a)(1), (3), (4), (7), (8) and (b)(1).  Additionally, defendant never objected when the sentencing court explicitly noted she had admitted several aggravating factors and then considered the aggravating and mitigating factors in deciding the appropriate sentence for count 6.

Because the record fails to show that defendant did not admit the aggravating circumstances, we cannot conclude the trial court erred in imposing the midterm on count 6.

**C.  Section 654**

In sentencing defendant, the trial court imposed sentences for counts 3 (conspiracy to commit robbery) and counts 6 and 7 (assault with a

9

semiautomatic firearm).  Defendant contends the trial court should have stayed the sentence on count 3 because the overt acts to which she pled no contest also formed the basis for the assault charges in counts 6 and 7.  We are not persuaded.

### 1. General Principles

Section 654 provides:  "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."  (§ 654.)  When section 654 applies, a trial court can "impose sentence on all counts, and then stay execution of sentence as necessary to comply with section 654."  (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1469 (*Alford*).)

"Whether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective.  [Citations.]  We first consider if the different crimes were completed by a 'single physical act.' "  (*People v. Corpening* (2016) 2 Cal.5th 307, 311 (*Corpening*).)  A single physical act occurs when "the same physical action . . . completed the actus reus of each charged crime."  (*Id.* at p. 313.)  If different crimes were completed by a single physical act, "the defendant may not be punished more than once for that act."  (*Id.* at p. 311.)

"Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of conduct reflects a single ' "intent and objective" ' or multiple intents and objectives."  (*Corpening*, *supra*, 2 Cal.5th at p. 311.)  "If a defendant has independent criminal objectives, [they] may be punished for each crime committed

10

pursuing an independent objective, even if the crimes share common acts or are otherwise part of an *indivisible* course of conduct. [Citation.] However, '[i]f all the offenses are incidental to one objective, the defendant may be punished for any one of them, but not for more than one.' " (*People v. Kopp* (2019) 38 Cal.App.5th 47, 90 (*Kopp*), italics added[3].) That said, "even if a course of conduct is ' "directed to one objective," ' it may ' "give rise to multiple violations and punishment" ' if it is ' "divisible in time." ' [Citations.] 'This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken.' " (*Ibid.*)

" 'The question of whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination.' " (*Kopp*, *supra*, 38 Cal.App.5th at p. 91.) We "view the evidence in the light most favorable to the sentencing order and presume the existence of facts a trier of fact could reasonably deduce from the evidence" and will uphold a court's expressed or implied findings on this point if they are supported by substantial evidence. (*Ibid.*)

---

[3] *Kopp* was an opinion addressing the appeals of both Kopp and his co-defendant, Hernandez. The Supreme Court denied Kopp's petition for review but granted review in Hernandez's case limited to the following issue: "Must a court consider a defendant's ability to pay before imposing or executing fines, fees, and assessments? If so, which party bears the burden of proof regarding defendant's inability to pay?" It is the holding pertaining to Kopp's case that we discuss.

## 2. *Analysis*

### (a) *Counts 3, 6, and 7*

Defendant contends her sentence on count 3 should have been stayed under section 654 because the overt acts underlying the conspiracy to commit robbery formed the basis for the assaults in counts 6 and 7.

A similar argument was made and rejected in *Kopp*, *supra*, 38 Cal.App.5th 47. In that case, Kopp was sentenced for conspiracy to commit murder (count 3), conspiracy to dissuade a witness (count 4), and furnishing methamphetamine (count 5). (*Kopp*, at pp. 55, 89.) On appeal, Kopp argued her sentence on count 5 should have been stayed pursuant to section 654, because the overt acts underlying the conspiracy to commit murder in count 3 encompassed the furnishing methamphetamine count. (*Kopp*, at pp. 89–90.) The Court of Appeal rejected this. Although furnishing of methamphetamine was one of the overt acts presented to the jury to establish the conspiracy, the court observed there were numerous other proffered overt acts that the jurors could have accepted to support the conspiracy charge; hence, the record did not compel the conclusion that each juror determined that furnishing the methamphetamine was the overt act to support the verdict on count 3. (*Kopp*, at p. 91.) After acknowledging there was a good argument that Kopp obtained and furnished the methamphetamine "as payment to murder one witness and dissuade the other from testifying," the court nonetheless observed that the alleged overt acts, any one of which could have supported the conspiracy verdict, "occurred over a period of several days" and that the "gaps in time" between such acts "provided Kopp with time to reflect on her next steps, making her actions divisible and multiple punishments appropriate." (*Kopp*, at p. 92.)

12

Here, count 3 of the information charged defendant with conspiracy to commit robbery and alleged the following overt acts: "Defendants agreed to commit a robbery of [S.M.] of marijuana; [¶] Defendant Saenz suggested Defendant Battiest procure a firearm for the robbery; [¶] Defendant Saenz set up a meeting with [S.M.]; [¶] Defendant Saenz directed [S.M.] to meet her and Defendant Battiest in the area of Quigg Drive in Santa Rosa; [¶] Defendant Saenz showed up at Quigg Drive; Defendant Battiest showed up at Quigg Drive; Defendant Battiest asked [S.M.] to see the marijuana; [¶] Defendant Battiest shot [J.G.P.] with a firearm; [¶] Defendant Battiest shot [S.M.] with a firearm; [¶] Defendant Battiest and Defendant Saenz then fled the area together in the same vehicle." (Bullet points omitted.)

It is true that the conspiracy count alleged overt acts which included the shootings of both victims, which formed the basis for counts 6 and 7. But, the overt acts alleged as to count 3 consisted of a number of different overt acts that could have independently supported the conspiracy count. (*People v. Tatman* (1993) 20 Cal.App.4th 1, 9–10 [crime of conspiracy requires agreement to commit a crime and at least one overt act]; see *People v. Robinson* (1954) 43 Cal.2d 132, 139 ["overt acts need not be in themselves criminal in nature so long as they are done in pursuance of the conspiracy"].) As such, at the first step of the section 654 inquiry, as in *Kopp*, the record does not necessitate the conclusion that the shootings were the overt acts supporting the conspiracy conviction.

Turning to the second step of the section 654 inquiry, we next ask whether all the offenses were incidental to one objective, or, if incidental to one objective, whether they were divisible in time. Relying on *Kopp*, *supra*, 38 Cal.App.5th 47, the People posit that the numerous overt acts were

13

divisible in time from the shootings, therefore the shootings and conspiracy counts could be punished separately. We find this persuasive.

Typically, punishment for both a conspiracy and an underlying substantive offense is impermissible when the conspiracy contemplated only the act performed in the substantive offense. (*People v. Ramirez* (1987) 189 Cal.App.3d 603, 615.) Here, it is undisputed that the object of the conspiracy was to rob S.M. of marijuana. While there is substantial evidence in the record indicating the shooting of the victims was incidental to that objective, there is also substantial evidence that the overt actions committed by defendant were divisible in time. Specifically, the evidence at the preliminary hearing, which constituted the factual basis for the plea, established that some of the overt acts—such as defendant and Battiest selecting S.M. as the robbery victim and defendant telling Battiest to obtain a firearm—occurred on October 18 or 19, 2022, whereas the attempted robbery and attendant shootings occurred more than a week later on October 28, 2022. Because the overt acts occurred over a period of time, with gaps in between allowing defendant to reflect, defendant's actions are properly viewed as divisible and warranting multiple punishment.

In sum, the trial court did not err in failing to "stay" the sentence on count 3.[4]

---

[4] Having so concluded, we need not and do not address the People's argument that multiple sentencing was appropriate because Battiest's shootings amounted to gratuitous violence against helpless and unresisting victims and therefore were not incidental to the robbery for purposes of section 654. (See *People v. Bui* (2011) 192 Cal.App.4th 1002, 1016; *People v. Cleveland* (2001) 87 Cal.App.4th 263, 272 [section 654 " 'cannot, and should not, be stretched to cover gratuitous violence or other criminal acts far beyond those reasonably necessary to accomplish the original offense.' "].)

14

*(b) Count 4*

Although defendant does not discuss count 4 (attempted second degree robbery) specifically in relation to count 3, the People concede the sentence on count 4 should be stayed pursuant to section 654 because the attempted robbery was the object of the charged conspiracy. We accept that concession. Section 654 bars multiple punishment " 'when the conspiracy has but one object which is punished as a substantive offense.' " (*People v. Beman* (2019) 32 Cal.App.5th 442, 447.) Because the objective of the conspiracy was to rob S.M. of marijuana, which was also the basis of the attempted robbery count, the trial court erred in imposing concurrent sentences for counts 3 and 4.

As to the matter of remedy, the People posit that a remand is unnecessary and this court should simply stay the sentence on count 4 because the trial court ran the sentence on count 4 concurrent with the other terms, making it clear the court intended to add time to the total sentence for count 3 but not for count 4. Defendant does not disagree, and neither do we. Because remanding the matter for resentencing would constitute an idle act consuming " 'ever-more-scarce judicial resources' " (*People v. Ledbetter* (2014) 222 Cal.App.4th 896, 904; *Alford, supra* 180 Cal.App.4th at p. 1473), we will order the sentence on count 4 stayed pursuant to section 654 (§ 1260; see, e.g., *People v. Nault* (2021) 72 Cal.App.5th 1144, 1149).

### DISPOSITION

The sentence on count 4 is stayed pursuant to section 654. The trial court is directed to prepare and transmit an amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

15

_____
Fujisaki, J.

WE CONCUR:


_____
Tucher, P.J.


_____
Petrou, J.


*People v. Saenz* (A169143)

16