Filed 3/28/25  P. v. Saucedo CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>NOE SAUCEDO,<br><br>　　　Defendant and Appellant. | A169285<br><br>(Contra Costa County<br>Super. Ct. No. 05001820984) |

Noe Saucedo (appellant) appeals from the trial court's resentencing following his partially successful prior appeal.  We affirm.

FACTUAL BACKGROUND

"On the morning of January 17, 2018, a white Ford F250 pickup truck was stolen from a street in Pittsburg.  At some point after noon, sheriff's deputy Quinton Valentine saw the truck leave a gas station parking lot.  Deputy Valentine was in a patrol car, and he followed the truck into a fast-food parking lot.  Valentine noticed the driver of the truck, whom he identified as appellant, look back at him in the truck's mirrors.

"Deputy Valentine followed the white truck onto Highway 4 East.  He noticed the truck's brake lights were working.  The deputy followed appellant two to three car lengths behind.  He did not initiate a traffic stop or pursuit

1

(in which he would use lights and sirens) because he needed to wait for backup.  The deputy continued to follow appellant, who drove at the speed of traffic, about 65 to 70 miles per hour.  No other car was between the patrol car and the truck, and the deputy followed appellant's lane changes.

"As appellant approached the exit for Somersville Road, he moved into the exit-only lane, and then he changed lanes again to stay on the freeway.  Deputy Valentine followed appellant's lane changes.  An eyewitness said it appeared the patrol car was purposely changing lanes when the truck did in order to follow the truck.

"The truck then almost passed the exit ramp and 'nearly to the last minute . . . swerved in an abrupt manner' onto a 'little dirt embankment' and then 'back onto the exit ramp for Somersville.'  When Deputy Valentine saw that, he followed down the ramp, radioed dispatch that he was in pursuit, and activated the patrol car's overhead lights and sirens.  The officer was about 15 car lengths behind appellant at that point.

"The white truck accelerated as it went down the exit ramp, from about 55 to about 70 to 80 miles per hour.  An eyewitness testified it appeared the truck was trying to get away.  Another eyewitness testified, 'It was definitely faster than what a vehicle would be going down a ramp usually, absolutely.'  The truck's brake lights did not activate as it sped down the ramp.

"There was a traffic light showing red in appellant's direction at the end of the exit ramp.  The truck sped through the red light and crashed into a silver Ford F150 truck that was driving on Somersville Road.  The silver truck was smaller than the white truck.  The crash was '[v]ery, very loud'; it '[s]ounded like a bomb going off.'  The impact of the collision pushed the silver truck over a large, raised median and into the oncoming traffic lanes.  The white truck stopped in the median.  Debris scattered everywhere; it looked

2

like there had been 'an explosion.' " (*People v. Saucedo* (2023) 90 Cal.App.5th 505, 508–509.) Two small children in car seats in the backseat of the silver truck died from their injuries. (*Id.* at p. 509.)

PROCEDURAL BACKGROUND

The jury found appellant guilty of two counts of murder (Pen. Code, § 187, subd. (a));[1] evading a police officer causing injury (Veh. Code, § 2800.3, subd. (a)); driving or taking a vehicle without consent (Veh. Code, § 10851, subd. (a)); and misdemeanor possession of a controlled substance (Health & Saf. Code, § 11377).[2] At the 2020 sentencing hearing, the trial court sentenced appellant to concurrent terms of 15 years to life on the two murder counts, plus consecutive terms of 7 years (the upper term) on the evading count, and 8 months on the vehicle taking count. The court also sentenced appellant to a concurrent one-year term in county jail on the misdemeanor count.[3]

On appeal, this court reversed the conviction for evading a police officer causing injury, and otherwise affirmed. (*People v. Saucedo*, *supra*, 90 Cal.App.5th at p. 519.)

---

[1] All undesignated statutory references are to the Penal Code.

[2] On our own motion, we augment the record to include the record in appellant's prior appeal, case No. A160851. (Cal. Rules of Court, rule 8.340(c).) Because of this augmentation, appellant's February 11, 2025 request for judicial notice of portions of this record is denied as moot.

[3] The court did not expressly state whether the misdemeanor sentence ran consecutively or concurrently, but awarded appellant all actual credits for time served in county jail through the date of sentencing, indicating the misdemeanor sentence was concurrent. (See also § 669, subd. (b) ["Upon the failure of the court to determine how the terms of imprisonment on the second or subsequent judgment shall run, the term of imprisonment on the second or subsequent judgment shall run concurrently"].)

At the 2023 resentencing following remand, the trial court (a different bench officer) sentenced appellant to concurrent terms of 15 years to life on the two murder counts, plus a consecutive term of three years (the upper term) on the vehicle taking count. The court also sentenced appellant to a consecutive term of 364 days on the misdemeanor conviction, which was effected by subtracting 364 days from the number of actual credit days awarded at the original sentencing hearing. This appeal followed.

## DISCUSSION

### I.    *Aggravating Factors on the Vehicle Taking Count*

Between appellant's 2020 original sentencing and his 2023 resentencing, "[e]ffective January 1, 2022, . . . section 1170, subdivision (b) . . . was amended to prohibit imposition of an upper term sentence unless aggravating circumstances justify that term and the facts underlying any such circumstance, other than a prior conviction, 'have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.' (§ 1170[, subd. ](b)(2), as amended by Stats. 2021, ch. 731, § 1.3.) Allegations of prior convictions may be tried by the court alone and proven by certified records of conviction. (*Id*., subd. (b)(3).)" (*People v. Lynch* (2024) 16 Cal.5th 730, 742 (*Lynch*).) The amendment applies retroactively to cases not yet final on appeal. (*Id.* at p. 749.)

"[U]nder the current statute a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established. The violation is prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an upper term

4

sentence, or that those facts were otherwise proved true in compliance with the current statutory requirements. If the reviewing court cannot so determine, . . . the defendant is entitled to a remand for resentencing." (*Lynch*, *supra*, 16 Cal.5th at p. 768.)

At appellant's resentencing, the trial court relied on the following aggravating factors in imposing the upper term: the crime involved great bodily injury; appellant was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences were being imposed; "the manner in which the offense was committed without any regard for those around"; appellant was on probation when the crime was committed; and appellant's prior convictions were of increasing seriousness. (See Cal. Rules of Court, rule 4.421(a)(1) & (7), (b)(2) & (4).) None of these factors were stipulated to by appellant or found true beyond a reasonable doubt by a jury or judge.

Appellant concedes that any error is harmless as to three of the aggravating factors relied on by the trial court: the crime involved great bodily injury, appellant was on probation when the crime was committed, and appellant's prior convictions are of increasing seriousness. The parties dispute prejudice as to the remaining two factors.[4]

With respect to the factor that the crime was committed "without any regard for those around," appellant argues reasonable jurors could disagree because the evidence showed he was not speeding before he exited the freeway and a jury could conclude that his acceleration on the exit ramp was the result of "a panicked reaction to losing control of the vehicle that resulted in him mistakenly hitting the gas instead of the brakes." We disagree. It is

---

[4] Because we find any error harmless, we need not and do not decide whether the trial court erred with respect to all of the factors.

immaterial that appellant may have been acting with regard for those around before exiting the freeway. And in finding appellant guilty of murder, the jury rejected any theory that his acceleration as he exited was accidental. The only facts serving as a basis for the jury's murder verdicts were that appellant sped up while exiting the freeway and deliberately drove through a red light. We find beyond a reasonable doubt that the jury would have found appellant acted without any regard for those around him.

The remaining factor is that appellant was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences were being imposed—to wit, the two murder sentences. The parties agree that the sentences could have been imposed consecutively because they involved different victims. (*People v. Calhoun* (2007) 40 Cal.4th 398, 408 [courts can "consider the fact of multiple victims as a basis for imposing . . . a consecutive sentence"].) Appellant argues that statements by the trial court at the original sentencing hearing indicate it did not understand that it had the discretion to sentence the murder counts consecutively or, in any event, that a jury could have found that the court did not so understand. Assuming, without deciding, that proposition is correct, appellant does not establish that any misunderstanding by the original trial court is material to whether the aggravating factor is true or not. The factor is that "[t]he defendant was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences are being imposed." (Cal. Rules of Court, rule 4.421(a)(7).) We find beyond a reasonable doubt that a jury would find that consecutive sentences could have been imposed for the two murder counts, but concurrent sentences were in fact imposed.

II.     *Consecutive Term on the Misdemeanor Count*

Appellant argues the consecutive term on the misdemeanor count at resentencing impermissibly punished him for his successful first appeal. We disagree.

"When a defendant successfully appeals a criminal conviction, California's constitutional prohibition against double jeopardy precludes the imposition of more severe punishment on resentencing." (*People v. Hanson* (2000) 23 Cal.4th 355, 357.) This means " 'the court on remand may not impose an aggregate sentence greater than the one defendant initially received.' " (*People v. Trammel* (2023) 97 Cal.App.5th 415, 422.)

At the original sentencing, appellant's aggregate sentence was 22 years and 8 months to life in prison. At resentencing, his aggregate sentence was 18 years to life in prison, plus 364 days in county jail. Appellant concedes his aggregate sentence was not increased on resentencing. However, he argues that because his custody credits at resentencing were reduced by 364 days to account for the consecutive misdemeanor sentence, this "increased the actual time he would have to spend in prison before having an opportunity to be released on parole." Appellant fails to demonstrate that, even accounting for the reduced custody credits, his overall time in prison will be longer after resentencing: his sentence on remand was effectively 19 years to life in custody, which is still less than the original sentence of 22 years and 8 months to life.[5]

---

[5] Appellant's opening brief raised two additional issues regarding custody credits and an error in the abstract of judgment. Appellant subsequently withdrew these issues after the trial court filed an amended abstract of judgment.

## DISPOSITION

The judgment is affirmed.


SIMONS, J.


We concur.

JACKSON, P. J.
BURNS, J.


(A169285)