Filed 11/21/25  P. v. White CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JEREMIAH WHITE et al.,<br><br>    Defendants and Appellants. | B338087<br><br>(Los Angeles County<br>Super. Ct. No. XSCTA139142) |

APPEAL from an order of the Superior Court of Los Angeles County, Patrick Connolly, Judge.  Affirmed and remanded with instructions.

Christina Vanarelli, under appointment by the Court of Appeal, for Defendant and Appellant Jeremiah White.

Matthew Barhoma, under appointment by the Court of Appeal, for Defendant and Appellant Armando Felix.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant

Attorney General, Stacy S. Schwartz and Colleen M. Tiedemann, Deputy Attorneys General, for Plaintiff and Respondent.

_____

This is codefendants' Armando Felix's and Jeremiah White's second appeal. The first appeal followed each defendant's judgment of conviction and resulting 90-year-to-life aggregate sentence. In the prior appeal, we affirmed Felix's and White's conviction for the murder of Vance Byrd and Felix's conviction for the attempted murder of Randall Byrd. We vacated certain gang and related firearm enhancements because of a change in the law and reversed White's conviction for the attempted murder of Randall Byrd. After remand, the prosecution chose not to retry the gang allegations, and the trial court resentenced defendants. This appeal is from that resentencing.

We agree with White that the trial court must correct White's abstract of judgment to reflect that the court never imposed fines or fees other than restitution to the Victim's Compensation Board, and must recalculate his actual custody credits. With instructions to modify the judgment to reflect no fines or fees were imposed and the actual custody credits, we affirm the judgment as to White.

We reject Felix's arguments the trial court abused its discretion in refusing to strike the firearm enhancements and to impose concurrent sentences on the murder and attempted murder convictions. With instructions to modify the judgment to reflect actual custody credits, we affirm the judgment as to Felix.

## BACKGROUND

In 2015, with White as his driver, Felix shot and killed Vance Byrd and shot, but did not kill, Vance's father, Randall

2

Byrd.  (*People v. Felix et al.* (Feb. 8, 2023, B302339) [nonpub. opn.] at pp. 4, 6.)  "Randall Byrd testified the shooter . . . . stood about 10 to 15 feet away from Randall Byrd and shot multiple times, hitting Vance Byrd.  Randall Byrd was surprised the shooter did not hit him because the shots were fired in his direction.  Vance fell down on the driveway, in front of the Byrds' house." (*Id.* at p. 4.)  A person who knew Felix and White told police Felix and White would " 'drive around and . . . look for innocent person[s]' to shoot," and on the day of the shooting of Vance Byrd, were looking for a member of their rival gang to kill.[1]  (*Felix*, at pp. 7–8.)

"The jury convicted Felix of the murder of Vance Byrd, the attempted murder of Randall Byrd, and conspiracy to commit murder.  With respect to each crime, the jury found true gang and firearm enhancements, including that Felix personally used and intentionally discharged a firearm causing death to Vance Byrd and that a principal personally used and intentionally discharged a firearm causing death to Vance Byrd.  The jury found that the murder and the attempted murder were committed willfully and with premeditation and deliberation." (*People v. Felix et al.*, *supra*, B302339 at pp. 14–15.)  Except for "the personal use and discharge firearm enhancements, the jury convicted White of the same offenses and the same enhancements.  White admitted he suffered a prior conviction for

---

[1]  This claimed acquaintance of Felix and White recanted at trial. (*People v. Felix et al.*, *supra*, B302339 at pp. 8–11.)

robbery and that it was a serious and violent felony within the meaning of the 'Three Strikes' law."[2] (*Felix,* at p. 15.)

## 1. *Information related to resentencing Felix*

In 2023, upon remand from the first appeal, Felix filed a sentencing memorandum requesting that the trial court sentence him to 25 years to life. Felix argued he was entitled to a "full resentencing," and under section 1385, subdivision (c), the court had to strike the firearm enhancements imposed pursuant to section 12022.53, subdivision (d). Felix also maintained the court had to run the sentences on his murder and attempted murder convictions concurrently because those convictions involved a "single shooting," and not separate acts. Finally, he claimed a 25-year-to-life sentence was consistent with an internal policy of the Los Angeles District Attorney. According to Felix, pursuant to that policy, the District Attorney's Office would "no longer pursue" certain firearm allegations.

The People requested an indeterminate sentence of 82 years to life. The People requested the court impose the firearm enhancements on the murder and attempted murder counts and also requested the court order Felix to serve the sentences on his murder and the attempted murder convictions consecutively. The probation report indicated Felix's criminal convictions began in 2011, when he was convicted of driving while unlicensed, a misdemeanor. The next year, he was convicted of the same offense. In 2013, Felix was convicted of possession of a controlled substance with a firearm. Felix was on

---

[2] Undesignated statutory citations are to the Penal Code. The Three Strikes Law is codified in section 667, subdivisions (b)–(i) and section 1172.12.

4

probation when he murdered Vance Byrd and attempted to murder Randall Byrd.

### 2.  *Information related to resentencing White*

White argued he was entitled to a full resentencing and it was in the interest of justice to dismiss his prior strike conviction.

The People requested the trial court sentence White to an indeterminate term of 50 years to life and a five-year-determinate term for the section 667, subdivision (a) serious felony enhancement.  The probation report indicated White's criminal history dated back to 2008, when he was convicted of driving with a suspended license.  In 2010, he was convicted of second degree robbery, and in 2010, 2011, and 2013, of driving with a suspended license.

### 3.  *The trial court resentences Felix to 57 years to life and White to 30 years to life*

At the May 7, 2024 resentencing hearing, the prosecutor informed the court the People would not retry the gang and related firearm enhancements.  Consistent with their prehearing brief, the People requested the court sentence Felix to 82 years to life, and White to 50 years to life plus a five year determinate sentence.  To argue that this sentence was in the interest of justice, the prosecutor relied on the facts underlying the convictions, specifically, that Felix and White "hunt[ed]" a rival gang member to kill.  According to the prosecutor, a witness testified at trial, "[T]his was not the first and only time, but that this has happened over and over and over again . . . ."  The prosecutor did not elaborate, but we assume the prosecutor was relying on the evidence quoted above that a person who knew Felix and White told police that Felix and White would

5

" 'drive around and . . . look for innocent person[s]' to shoot" and on the day Vance Byrd's shooting, were looking for a member of their rival gang to kill. (*People v. Felix et al.*, *supra*, B302339 at pp. 7–8.)

Felix's counsel reminded the court Felix was "entitled to a full resentencing"; the court responded, "I understand that." The prosecutor agreed Felix was entitled to a full resentencing and noted the court was not bound by prior sentencing choices.

Felix's counsel contended Felix was entitled to the benefit of ameliorative sentencing laws, specifically, that the court had to consider whether imposing the firearm enhancements was in the interest of justice. Felix's counsel requested the court strike the enhancements on his murder and attempted murder counts. Felix's counsel also requested the court run the murder and attempted murder sentences concurrently. Counsel stated, "[T]here are numerous duplicative enhancements in this case, that if the court [were] to add as to each count, I think it wouldn't further the interest of justice" and would not further public safety. The court asked counsel to elaborate why it was in the interest of justice to refrain from imposing the firearm enhancements. Counsel responded that it did not "aid" justice to impose a term greater than 25 years to life.

White's counsel requested a sentence of 25 years to life. White's counsel then "echo[ed]" Felix's counsel's arguments. White's counsel stipulated White's admission of his prior robbery conviction was also an admission of a violation of section 667, subdivision (a).

For the murder, the court sentenced White to 25 years to life. The court struck the prior strike offense for purposes of the Three Strikes Law. The court sentenced White to five years for

the section 667, subdivision (a) prior serious felony conviction.[3] The court sentenced White to 30 years to life on the conspiracy and stayed the sentence pursuant to section 654. White's counsel represented that White "cannot afford to pay," and the court found, "[T]here is good cause to waive those fees and fines" without specifying what fines or fees were being waived. The abstract of judgment, however, reflects a $300 restitution fine pursuant to section 1202.4, subdivision (b); a $300 fine pursuant to section 1202.45 (suspended unless parole is revoked); an $80 court security fee pursuant to section 1465.8; and a $60 criminal conviction assessment under Government Code section 70373. Finally, the court ordered White and Felix to pay $8,631.47 in restitution to the California Victim Compensation Board pursuant to section 1202.4, subdivision (f).[4]

The court sentenced Felix to 25 years to life for the murder and added 25 years for the section 12022.53, subdivision (d) firearm enhancement. The court imposed the enhancement because Felix discharged the gun multiple times and the court "believe[d] that in the interest of justice that that should and will be imposed . . . ." For the attempted murder the court sentenced

[3] Section 667, subdivision (a)(1) provides: "A person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction that includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively."

[4] On appeal, defendants do not challenge this payment to the California Victim Compensation Board.

Felix to a consecutive seven-year-to-life sentence. The court indicated Randall Byrd testified Felix fired "at him." The court stated, "I do recall the testimony of Mr. Byrd that the first thing he did check, believing that his son was still inside the house, was to check to see if he had been hit. And he had not been hit. And his testimony was that that gun was fired at him." The court stayed the section 12022.53, subdivision (d) enhancement on the attempted murder conviction. The court sentenced Felix to 50 years to life for the conspiracy conviction and stayed that sentence pursuant to section 654.

The trial court did not address Felix's custody credits. Felix's 2024 abstract of judgment shows 1,393 custody credits, the same number imposed at the original sentencing. Similarly, White's 2024 abstract of judgment reflects the amount—1,393 custody credits—from his original sentencing.

## DISCUSSION

We first discuss White's arguments and then address Felix's contentions.

### A. The Trial Court Must Correct White's Abstract of Judgment To Reflect No Fines and Recalculate His Actual Custody Credits

White argues that the trial court should have recalculated his actual custody credits when it resentenced him and that the abstract of judgment incorrectly reflects fines and fees the court waived. Respondent agrees with White, but argues under section 1202.4, subdivisions (b) and (c), imposition of a restitution fund fine is mandatory unless the trial court finds on the record a "compelling and extraordinary reason" for not imposing the fine, which does include inability to pay.

8

Our Supreme Court has held the People forfeit imposition of the restitution fund fine when the prosecution did not object below to the trial court's failure to impose that fine. (*People v. Tillman* (2000) 22 Cal.4th 300, 303.) Accordingly, here too, respondent has forfeited imposition of the restitution fund fine.

On remand, the trial court is ordered to correct the abstract of judgment to reflect no fines and fees. Additionally, the trial court shall recalculate White's actual custody credits. (§ 2900.1 ["Where a defendant has served any portion of his sentence under a commitment based upon a judgment which judgment is subsequently declared invalid or which is modified during the term of imprisonment, such time shall be credited upon any subsequent sentence he may receive upon a new commitment for the same criminal act or acts."].)

## B. Felix Demonstrates No Abuse of Discretion in His Sentence Except the Trial Court Must Correct the Abstract of Judgment To Reflect His Actual Custody Credits

Felix repeats the arguments he made in the trial court, that is, the court should have dismissed the firearm enhancements and sentenced him to concurrent terms for the murder and attempted murder convictions. Felix also argues the sentence he requests is consistent with the sentencing policy of the former Los Angeles District Attorney. We review the trial court's sentencing decisions for abuse of discretion. (*People v. Moseley* (2024) 105 Cal.App.5th 870, 874.)

9

### *1. The trial court did not abuse its discretion in not striking the firearm enhancements for his murder and attempted murder convictions*

Felix argues that as of January 1, 2022, Senate Bill No. 81 creates a "statutory presumption" in favor of dismissal where multiple enhancements are alleged or the enhancement could result in a sentence exceeding 20 years. According to Felix, this presumption applies unless the trial court finds that dismissal of the enhancement would endanger public safety. Felix points out, "[T]here is no indication that the trial court made any express finding that 'dismissal of the enhancement would endanger public safety . . . .' " Felix then concludes, "Because Felix's case falls squarely within the type of circumstances identified by this ameliorative legislation as qualifying for relief, the trial court erred by not dismissing the enhancements under . . . section 12022.53, subdivision (d) when it did not specifically find that there would elevated risk to public safety if the [*sic*] were not applied in Defendant's case."

"Senate Bill No. 81 (Stats. 2021, ch. 721, § 1) added subdivision (c) to section 1385, effective January 1, 2022, allowing the trial court to dismiss any enhancement 'in the furtherance of justice' (§ 1385, subd. (c)(1)) unless otherwise prohibited, and providing that nine enumerated mitigating circumstances . . . 'weigh[ ] greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.' [Citation.]"**5** (*People v. Walker* (2024) 16 Cal.5th 1024, 1030–1031 (*Walker*).)

---

**5** The mitigating circumstance are as follows:

Felix's arguments are not consistent with our high court's description in *Walker* of a trial court's discretion to strike or impose enhancements. *Walker* counsels that under section 1385, subdivision (c)(2), "[a]bsent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present. [Citation.] In other words, if the court does not find that

---

"(A) Application of the enhancement would result in a discriminatory racial impact as described in paragraph (4) of subdivision (a) of Section 745.

"(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed.

"(C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed.

"(D) The current offense is connected to mental illness.

"(E) The current offense is connected to prior victimization or childhood trauma.

"(F) The current offense is not a violent felony as defined in subdivision (c) of Section 667.5.

"(G) The defendant was a juvenile when they committed the current offense or any prior offenses, including criminal convictions and juvenile adjudications, that trigger the enhancement or enhancements applied in the current case.

"(H) The enhancement is based on a prior conviction that is over five years old.

"(I) Though a firearm was used in the current offense, it was inoperable or unloaded." (§ 1385, subd. (c)(2).)

11

dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' [Citation.]" (*Walker*, *supra*, 16 Cal.5th at p. 1029.) *Walker* also rejected Felix's assertion of a "statutory presumption" when it held there is *not* a "rebuttable presumption in favor of dismissal that can only be overcome by a finding that dismissal endangers public safety." (*Id.* at p. 1033.)

The record, taken as a whole, indicates the trial court understood the scope of its discretion and the court specifically questioned counsel about the meaning of the "interest of justice." (See Background, part 3, *ante*.) The only argument Felix levels against the trial court's exercise of that discretion is that the court failed to make a finding of endangerment to public safety. *Walker*, however, held such a finding is not a sine qua non to exercising discretion not to strike enhancements. Felix makes no attempt to discuss mitigating factors (see fn. 6, *ante*) or "neutraliz[ing]" "countervailing factors" (*Walker*, *supra*, 16 Cal.5th at p. 1036) in support of his contention the trial court abused its discretion. Finally, although the information alleged multiple enhancements, the court imposed the firearm enhancement only on the murder count. The court stayed the enhancement on the attempted murder count. Additionally, as in *People v. Torres* (2025) 113 Cal.App.5th 88, Felix's sentence "already exceeded 20 years without any enhancement, so application of the firearm enhancement" did not result in a sentence of over 20 years. (See *id.* at p. 93.) In sum, Felix fails to

12

satisfy his burden to show the trial court's refusal to strike the firearm enhancements was arbitrary or irrational. (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637 [" '[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it.' "].)

### 2. *The trial court did not abuse its discretion in running the seven-year-to-life sentence for attempted murder consecutive to Felix's murder sentence*

Felix acknowledges the "broad discretion" afforded trial courts as to whether to impose consecutive sentences. He also acknowledges that California Rules of Court, rule 4.425 "outlines the circumstances a court should consider in exercising such discretion." He relies on an excerpt from the People's recitation of the facts in their resentencing brief to argue, "[T]he facts do not support consecutive sentences because the crimes and their objectives were not independent of each other, did not involve separate acts, and did not occur at different times [and] places."

We agree that California Rules of Court, rule 4.425 provides guidance as follows to trial courts in considering whether to impose consecutive or concurrent sentences:

"(a) **Facts relating to crimes**

"Facts relating to the crimes, including whether or not:

"(1) The crimes and their objectives were predominantly independent of each other;

"(2) The crimes involved separate acts of violence or threats of violence; or

"(3) The crimes were committed at different times or separate places, rather than being committed so closely in

13

time and place as to indicate a single period of aberrant behavior.

. . .

"(b) **Other facts and limitations**

"Any circumstances in aggravation or mitigation, whether or not the factors have been stipulated to by the defendant or found true beyond a reasonable doubt at trial by a jury or the judge in a court trial, may be considered in deciding whether to impose consecutive rather than concurrent sentences, except:

"(1)  A fact used to impose the upper term;

"(2)  A fact used to otherwise enhance the defendant's sentence in prison or county jail under section 1170(h); and

"(3)  A fact that is an element of the crime."

Contrary to Felix's argument, the category of facts in California Rules of Court, rule 4.425(a) are not the only facts a trial court may consider when deciding whether to impose consecutive or concurrent sentences.  Trial courts may consider whether there are multiple victims.  (*People v. Calhoun* (2007) 40 Cal.4th 398, 408.)  Here, the trial court emphasized that Felix shot at Randall Byrd *and* Vance Byrd.  These were two separate crimes against two different victims.  Those facts support the trial court's exercise of discretion to impose consecutive sentences.

### 3. *Felix fails to demonstrate the relevance of former Los Angeles District Attorney internal sentencing policy directives, which are now moot*

Felix argues the Los Angeles County District Attorney's Office's special directives[6] "must . . . be given judicial consideration" and the trial court erred in failing to do so. Felix relies principally on *Nazir v. Superior Court* (2022) 79 Cal.App.5th 478 (*Nazir*) to support this argument.

In *Nazir*, based on the policy of the then Los Angeles County District Attorney (special directive 20-08), the prosecutor moved to dismiss firearm allegations under section 12022.5 and 12022.53. (*Nazir, supra*, 79 Cal.App.5th at p. 485.) *Nazir* described this policy as providing, " 'sentence enhancements or other sentencing allegations . . . shall not be filed in any cases and shall be withdrawn in pending matters.' " (*Id*. at p. 486.) When the trial court denied the prosecutor's motion, the defendant filed a petition for writ of mandate or prohibition arguing, among other points, that the trial court erred in denying the prosecutor's motion to dismiss. (*Id*. at p. 489.) The appellate court held the trial court "misunderstood the scope of its discretion" when it refused *to consider* the district attorney's policy, but that the trial court retained discretion to deny the motion to dismiss the firearm allegations notwithstanding the prosecutor's dismissal request. (*Id*. at p. 486.)

---

[6] In his resentencing brief below, Felix references District Attorney special directives Nos. 20-14 and 20.08. He did not attach either directive to his resentencing brief nor are the directives in our record.

15

*Nazir* is not on point. Here, the prosecution did not request dismissal of the firearm enhancements. To the contrary, the prosecution requested the trial court impose them. Also, in contrast to *Nazir,* the record demonstrates the trial court understood the scope of its discretion (see Background, part 3, *ante*). Felix does not argue otherwise.

Finally, as respondent argues, Felix's argument is moot. It is undisputed that in December 2024, the new District Attorney rescinded directive 20-08. Felix identifies no relief this court may provide based on a now revoked policy of the former Los Angeles District Attorney.[7] (See *People v. Gregerson* (2011) 202 Cal.App.4th 306, 321 [a case is moot where ruling cannot provide the parties with effective relief].)

### 4. *Felix's actual custody credits must be recalculated*

Although Felix does not raise the issue, respondent points out the trial court did not recalculate Felix's actual custody credits. We agree. Accordingly, on remand, the trial court should recalculate Felix's actual custody credits.

---

[7] In his reply brief on appeal, Felix emphasizes that the former policy was in effect when the case previously was before the trial court for resentencing. Felix, however, does not dispute that the policy is no longer in effect and fails to identify any relief this court could provide based on the former Los Angeles County District Attorney's policy directive.

## DISPOSITION

The case is remanded for the trial court to recalculate Armando Felix's and Jeremiah White's actual custody credits and to correct White's abstract of judgment insofar as it requires him to pay a $300 fine pursuant to Penal Code section 1202.4, subdivision (b); an $80 court security fee pursuant to section 1465.8; a $60 criminal conviction assessment under Government Code section 70373; and a $300 parole revocation fine pursuant to Penal Code section 1202.45. In all other respects, the judgments are affirmed.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

M. KIM, J.